# EXHIBIT A

FILED
2023 DEC 14 09:00 AM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 23-2-24742-6 SEA

IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
COUNTY OF KING

| | |
|---|---|
| STEPHANIE ALESHIRE, individually, and on behalf of all others similarly situated, | NO. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| FRED HUTCHINSON CANCER CENTER, UNIVERSITY OF WASHINGTON SCHOOL OF MEDICINE, UW MEDICAL CENTER, HARBORVIEW MEDICAL CENTER, VALLEY MEDICAL CENTER, UW PHYSICIANS, UW NEIGHBORHOOD CLINICS (d/b/a UW MEDICINE PRIMARY CARE), AIRLIFT NORTHWEST, and CHILDREN'S UNIVERSITY MEDICAL GROUP, | |
| Defendants. | |

Plaintiff, Stephanie Aleshire ("Plaintiff"), individually, and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants Fred Hutchinson Cancer Center d/b/a Fred Hutch ("Fred Hutch"), University Of Washington School Of Medicine, UW Medical Center, Harborview Medical Center, Valley Medical Center, UW Physicians, UW Neighborhood Clinics (d/b/a UW Medicine Primary Care), Airlift Northwest, and Children's

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

CLASS ACTION COMPLAINT - 1

1  University Medical Group (together "Defendants" or "UW Medicine"), and their present, former,
2  or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related
3  entities. Plaintiff alleges the following on information and belief—except as to her own actions,
4  counsel's investigations, and facts of public record.

## I.   INTRODUCTION

6   1.1   This class action arises from Defendants' failure to protect highly sensitive data—
7  which has resulted in a flood of extortionary threats by cybercriminals to Defendants' current and
8  former patients.

9   1.2   "UW Medicine" is an integrated health system—comprising, *inter alia*, the named
10  Defendants.[1]

11   1.3   Most relevant is Defendant Fred Hutchinson Cancer Center, which is a
12  Washington nonprofit organization that focuses on cancer care and research.[2]

13   1.4   As such, Defendants store a litany of highly sensitive personal identifiable
14  information ("PII") and protected health information ("PHI")—together "PII/PHI"—about their
15  current and former patients. But Defendants lost control over that data when cybercriminals
16  infiltrated their insufficiently protected computer systems in a data breach (the "Data Breach").

17   1.5   It is unknown for precisely how long the cybercriminals had access to Defendants'
18  network before the breach was discovered. In other words, Defendants had no effective means to
19  prevent, detect, stop, or mitigate breaches of their systems—thereby allowing cybercriminals
20  unrestricted access to current and former patients' PII/PHI.

21   1.6   On information and belief, cybercriminals were able to breach Defendants'
22  systems because Defendants failed to adequately train their employees on cybersecurity and failed
23  to maintain reasonable security safeguards or protocols to protect the Class's PII/PHI. In short,

24

---

25  [1] *UW Medicine Overview*, UNIVERSITY OF WASHINGTON,
26  https://depts.washington.edu/uwmmktg/wp-content/uploads/2022/11/UWMedicine-
Overview.pdf (last visited Dec. 9, 2023).
[2] *About Us*, FRED HUTCH, https://www.fredhutch.org/en/about.html (last visited Dec. 9, 2023).

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

CLASS ACTION COMPLAINT - 2

1  Defendants' failures placed the Class's PII/PHI in a vulnerable position—rendering them easy
2  targets for cybercriminals.

3      1.7    Worryingly, this isn't Defendants first data breach. After all, Defendants were *also*
4  hacked on March 25, 2022.[3] The next day, Defendants "discovered suspicious activity associated
5  with a single employee's business email account."[4] And Defendant admitted that during that 2022
6  data breach, "an unauthorized individual accessed the account."[5]

7      1.8    Thus, this most recent Data Breach—which gives rise to the claims discussed
8  herein—is simply part and parcel of Defendants' pattern of negligently inadequate data security.

9      1.9    Stephanie Aleshire is a Data Breach victim, having received both (1) an email from
10  Fred Hutchinson Cancer Center, and (2) a message from UW Medicine via "MyChart" which
11  notified her that her information was affected in the breach.

12      1.10   Plaintiff Stephanie Aleshire brings this class action on behalf of herself and all
13  others harmed by Defendants' misconduct.

14      1.11   The exposure of one's PII/PHI to cybercriminals is a bell that cannot be unrung.
15  Before this data breach, current and former patients' private information was exactly that—
16  private. Not anymore. Now, their private information is forever exposed and unsecure.

17                          **II.    PARTIES**

18      2.2    Plaintiff, Stephanie Aleshire, is natural person and citizen of Washington. She
19  resides in Redmond, Washington, where she intends to remain.

20      2.3    Defendant, Fred Hutchinson Cancer Center, is a Washington Nonprofit
21  Corporation with its principal place of business at 1100 Fairview Ave. N, Seattle, Washington
22  98109.

23
24
___
25  [3] *Notice of Data Breach*, CALIFORNIA ATTY GEN,
    https://oag.ca.gov/system/files/%28AD%20CM%2012M%29%20ELN-
26  15938%20Fred%20Hutchinson%20CC.pdf (last visited Dec. 9, 2023).
    [4] *Id.*
    [5] *Id.*

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

2.4     Defendant, University of Washington School of Medicine, is a school of the University of Washington. Its principal place of business is at 1959 NE Pacific St, Seattle, Washington 98195.

2.5     Defendant, UW Medical Center, is an acute care hospital with two campuses— one at 1550 N 115th St., Seattle, Washington 98133, and the other at 1959 N.E. Pacific St., Seattle, Washington 98195.

2.6     Defendant, Harborview Medical Center, is an acute care hospital owned by King County and managed by UW Medicine under a long-term Hospital Services Agreement. Its principal place of business is at 325 Ninth Ave., Seattle, Washington 98104.

2.7     Defendant, Valley Medical Center, is a public acute care public hospital district operated pursuant to a Strategic Alliance Agreement with UW Medicine. Its principal place of business is at 400 S 43rd St., Renton, Washington 98055.

2.8     Defendant, UW Physicians, is an adult practice group of physicians and healthcare professionals. The University of Washington is its sole corporate member. Its principal place of business is at 701 5th Ave. #700, Seattle, Washington 98104.

2.9     Defendant, UW Neighborhood Clinics d/b/a UW Medicine Primary Care, is a network of community-based primary and urgent care clinics. The University of Washington is its sole corporate member, with its principal place of business at 1410 NE Campus Pkwy, Seattle, Washington 98195.

2.10    Defendant, Airlift Northwest, is an air transport service owned by the University of Washington. Its principal place of business is at 6505 Perimeter Road South, Suite 200, Seattle, Washington 98108.

2.11    Defendant, Children's University Medical Group, is non-profit group practice. One of its corporate members in the University of Washington. Its principal place of business is at 4800 Sand Point Way NE, Seattle, Washington 98105.

### III.     JURISDICTION AND VENUE

3.1     Jurisdiction is proper in this Court under RCW § 2.08.010.

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

3.2    This Court has personal jurisdiction over Defendants because they are headquartered in Washington, regularly conduct business in Washington, and have sufficient minimum contacts in Washington.

3.3    Venue is proper in this Court under RCW § 4.12.020(3) because King County is where the causes of action arose.

## IV.    BACKGROUND

### Defendants Collected and Stored the PII/PHI of Stephanie Aleshire and the Class

4.1    Defendants comprise UW Medicine which is an integrated health system—including, *inter alia*, Fred Hutchinson Cancer Center which is a Washington nonprofit organization that focuses on cancer care and research.[6]

4.2    As part of their business, Defendants receive and maintain the PII/PHI of thousands of their current and former patients.

4.3    In collecting and maintaining the PII/PHI, Defendants agreed they would safeguard the data in accordance with their internal policies, state law, and federal law. After all, Plaintiff and Class members themselves took reasonable steps to secure their PII/PHI.

4.4    Under state and federal law, entities like Defendants have duties to protect their current and former patients' PII/PHI and to notify them about breaches. And Defendants recognize these duties as detailed *infra*.

4.5    Via its "Privacy Policy and Terms of Use," Fred Hutch declares that:

a.    Fred Hutch has a Privacy Policy that describes how we collect information from you or about you, why we collect this information, how we will use or disclose this information."[7]

b.    "In addition, Fred Hutch's Privacy Policy sets forth our general policies on information security."[8]

[6] *About Us*, FRED HUTCH, https://www.fredhutch.org/en/about.html (last visited Dec. 9, 2023).
[7] *Privacy Policy and Terms of Use*, FRED HUTCH, https://www.fredhutch.org/en/util/terms-privacy.html (last visited Dec. 9, 2023).
[8] *Id.*

CLASS ACTION COMPLAINT - 5

1

c.    And via its "Joint Notice of Privacy Practices," UW Medicine—including

2

University of Washington School of Medicine, UW Medical Center,

3

Harborview Medical Center, Valley Medical Center, UW Physicians, UW

4

Neighborhood Clinics d/b/a UW Medicine Primary Care, and Airlift

5

Northwest—declare that:

6

d.    "We are required by law to maintain the privacy and security of your

7

protected health information."[9]

8

e.    "We will let you know promptly if a breach occurs that may have

9

compromised the privacy or security of your information."[10]

10

f.    "We must follow the duties and privacy practices described in this notice

11

and give you a copy of it."[11]

12

g.    "We will not use or share your information other than as described here

13

unless you tell us we can in writing."[12]

14

h.    "Special laws apply to certain kinds of health information. There are extra

15

legal protections for health information about sexually transmitted

16

diseases, drug and alcohol abuse treatment records, mental health records,

17

and HIV/AIDS information. When required by law, we will not share this

18

type of information without your written permission."[13]

19

4.6    Similarly, in its "Notice of Privacy Practices," Defendant Children's University

20

Medical Group declares (via its corporate member Seattle Children's Hospital) that "We are

21

required by law" to:

22

23

---

24

[9] *Joint Notice of Privacy Practices*, FRED HUTCH (Dec. 19, 2022)
https://www.uwmedicine.org/sites/stevie/files/2023-01/A11499.MED_.M%20-

25

%20Notice%20of%20Privacy%20Practice%20BROCHURE%2011.01.22_a11y.pdf.
[10] *Id.*

26

[11] *Id.*
[12] *Id.*
[13] *Id.*

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

CLASS ACTION COMPLAINT - 6

1        a.    "Protect the privacy of your information." [14]

2        b.    "Provide this notice about our privacy practices."[15]

3        c.    "Follow the privacy practices described in this notice."[16]

4        d.    "Notify you if your patient health information has been compromised."[17]

5        e.    "This notice gives you information about the use and disclosure of your patient health information by these providers: . . . UW Medicine, which includes University of Washington Physicians and other University organizations."[18]

        f.    "Other than the uses and disclosures listed in this notice, we will not use or share your patient health information without your written authorization."[19]

## *Defendants' Data Breach*

4.7    On November 19, 2023, Defendants "detected unauthorized activity on our clinical network."[20] And Defendants believe that "the criminal group responsible is outside the United States."[21]

4.8    Defendants claim that "the UW Medicine system was not impacted."[22] But upon information and belief—and as detailed *infra*—the Data Breach did indeed impact the broader UW Medicine system. After all Defendants stated that "UW Medicine clinicians also provide care

[14] *Notice of Privacy Practices*, SEATTLE CHILDREN'S (Jan. 10, 2018) https://www.seattlechildrens.org/globalassets/documents/for-patients-and-families/pfe/pi397.pdf.
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Update on Data Security Incident*, FRED HUTCH (Dec. 7, 2023) https://www.fredhutch.org/en/about/about-the-hutch/accountability-impact/data-security-incident.html.
[21] *Id.*
[22] *Id.*

CLASS ACTION COMPLAINT - 7

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1  to patients at Fred Hutch and some services are provided across multiple Fred Hutch and UW

2  Medicine locations."[23]

3      4.9     Defendant admitted that Class members are "receiv[ing] threatening spam

4  email."[24]

5      4.10    Specifically, Defendant has confirmed that "threat actors" are actively sending

6  messages which "demand[] a ransom."[25]

7      4.11    Thus far, Defendants have refused to—or have been unable to—to explain to the

8  Class what types of PII/PHI were exposed.[26]

9      4.12    Currently, the precise number of persons injured is unclear. But upon information

10  and belief, the size of the putative class can be ascertained from information in Defendants'

11  custody and control. And upon information and belief, the putative class is over one hundred

12  members—as it includes their current and former patients.

13      4.13    And yet, Defendants waited until December 2023 before they began notifying the

14  class.

15      4.14    Thus, Defendants kept the Class in the dark—thereby depriving the Class of the

16  opportunity to try and mitigate their injuries in a timely manner.

17      4.15    And when Defendants did notify Plaintiff and the Class of the Data Breach,

18  Defendants acknowledged that the Data Breach created a present, continuing, and significant risk

19  of suffering identity theft, warning Plaintiff and the Class:

20          a.      "remain vigilant to protect against potential fraud and/or identity theft;"

21          b.      "review[] your account statements;"

22          c.      "monitor[] credit reports closely;"

23

24

25  ---
    [23] *Id.*
26  [24] *Id.*
    [25] *Id.*
    [26] *See id.*

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1            d.     "report any fraudulent activity or any suspected incidents of identity theft

2                to appropriate law enforcement authorities, including the police, as well as

3                the Federal Trade Commission;"

4            e.     "file a report with the FBI's Internet Crime Complaint Center at ic3.gov;"

5            f.     "contact the FTC at Federal Trade Commission, 600 Pennsylvania Avenue,

6                NW, Washington, DC 20580."[27]

7     4.16    Defendants failed their duties when their inadequate security practices caused the

8 Data Breach. In other words, Defendants' negligence is evidenced by their failure to prevent the

9 Data Breach and stop cybercriminals from accessing the PII/PHI. And thus, Defendants caused

10 widespread injury and monetary damages.

11     4.17    Since the breach, Defendants has promised to be "updating and enhancing systems

12 to prevent external parties from accessing information."[28] But this is too little too late. Simply

13 put, these measures—which Defendants now recognizes as necessary—should have been

14 implemented *before* the Data Breach.

15     4.18    On information and belief, Defendants failed to adequately train their employees

16 on reasonable cybersecurity protocols or implement reasonable security measures.

17     4.19    Further, the Notice of Data Breach shows that Defendants cannot—or will not—

18 determine the full scope of the Data Breach, as Defendants has been unable to determine precisely

19 what information was stolen and when.

20     4.20    Defendants have done little to remedy the Data Breach. And it is unclear if

21 Defendant has offered *anyone* basic credit monitoring and identity related services or even fully

22 identified the scope of the Data Breach.[29]

23

24

---

25 [27] *Id.*
[28] *Id.*

26 [29] *See Update on Data Security Incident*, FRED HUTCH (Dec. 7, 2023)
https://www.fredhutch.org/en/about/about-the-hutch/accountability-impact/data-security-incident.html.

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1    4.21    Because of Defendants' Data Breach, the sensitive PII/PHI of Plaintiff and Class

2    members was placed into the hands of cybercriminals—inflicting numerous injuries and

3    significant damages upon Plaintiff and Class members.

4    4.22    Worryingly, Class members have begun to receive "threatening emails claiming

5    names, Social Security numbers, medical history and other data of more than 800,000 patients

6    had been compromised."[30]

7    4.23    The cybercriminals have then "demanded $50 to have the information [of the

8    Class] scrubbed from the dark web."[31]

9    4.24    Specifically, one patient reported that "I got an email saying that 800,000 patient

10   records had been leaked and mine was among them. If I didn't pay $50, they would start selling

11   them on the dark web."[32]

12   4.25    And thus far, at least *three hundred* (300) of Defendants' current and former

13   patients have reported receiving similar emails.[33]

14   ***Plaintiff's Experiences and Injuries***

15   4.26    Plaintiff Stephanie Aleshire has been a patient of Fred Hutchinson for ten (10)

16   years, and a patient of UW Medicine for thirty-five (35) years.

17   4.27    As a result, Stephanie Aleshire was injured by Defendants' Data Breach.

18

19

20   [30] *Some Seattle cancer center patients are receiving threatening emails after last month's data
21   breach*, ABC NEWS (Dec. 9, 2023) https://abcnews.go.com/Health/wireStory/seattle-cancer-
     center-patients-receiving-threatening-emails-after-105522808.
22   [31] Ayanna Amadi, *Seattle-Based Cancer Center Patients Face Data Breach Threats: A Deep
     Dive Into the Incident and Its Implications*, MEDRIVA (Dec. 9, 2023)
23   https://medriva.com/breaking-news/seattle-based-cancer-center-patients-face-data-breach-
     threats-a-deep-dive-into-the-incident-and-its-implications/.
24   [32] *'DO NOT PAY IT': Fred Hutch warns of 'threatening spam emails' after cyberattack*, KING 5
25   (Dec. 7, 2023) https://www.king5.com/article/news/local/fred-hutch-warn-patients-threatening-
     emails-cyberattack/281-40365cfa-61c9-4395-91ad-2c819695d4c0.
26   [33] Kate Walters, *Hundreds of patients receive threatening emails after Fred Hutch cyberattack*,
     KUOW (Dec. 6, 2023) https://www.kuow.org/stories/hundreds-of-patients-receive-threatening-
     emails-after-fred-hutch-cyberattack.

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

4.28    As a condition of receiving medical services, Stephanie Aleshire provided her PII/PHI to Defendants. Defendants used that PII/PHI to facilitate their provision of medical services and to collect payment.

4.29    Plaintiff provided her PII/PHI to Defendants and trusted they would use reasonable measures to protect it according to Defendants' internal policies, as well as state and federal law. Defendants obtained and continues to maintain Plaintiff's PII/PHI and has a continuing legal duty and obligation to protect that PII/PHI from unauthorized access and disclosure.

4.30    Plaintiff reasonably understood that a portion of the funds paid to Defendants would be used to pay for adequate cybersecurity and protection of PII/PHI.

4.31    On December 6, 2023, Plaintiff received (1) an email from Fred Hutchinson Cancer Center, and (2) a message from UW Medicine via "MyChart" which both notified her that her information was affected in the breach.

4.32    Moreover, Plaintiff *already* received a notification from the credit reporting agency Equifax that warned her of a fraudulent and unauthorized inquiry to her credit.

4.33    Thus, on information and belief, Plaintiff's PII/PHI has already been published— or will be published imminently—by cybercriminals on the dark web.

4.34    Plaintiff has spent—and will continue to spend—significant time and effort monitoring her accounts to protect herself from identity theft. After all, Defendants directed Plaintiff to take those steps in their breach notice.

4.35    And in the aftermath of the Data Breach, Plaintiff has suffered from a spike in spam messages and phone calls—even though she is on the "do not call" list.

4.36    Because of Defendants' Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

4.37    Plaintiff suffered actual injury from the exposure and theft of her PII/PHI—which violates her rights to privacy.

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

4.38    Plaintiff suffered actual injury in the form of damages to and diminution in the value of her PII/PHI. After all, PII/PHI is a form of intangible property—property that Defendants were required to adequately protect.

4.39    Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendants' Data Breach placed Plaintiff's PII/PHI right in the hands of criminals.

4.40    Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate her injuries.

4.41    Today, Plaintiff has a continuing interest in ensuring that her PII/PHI—which, upon information and belief, remains backed up in Defendants' possession—is protected and safeguarded from additional breaches.

**Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft**

4.42    Because of Defendants' failure to prevent the Data Breach, Plaintiff and Class members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

    a.    loss of the opportunity to control how their PII/PHI is used;

    b.    diminution in value of their PII/PHI;

    c.    compromise and continuing publication of their PII/PHI;

    d.    out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

    e.    lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identify theft and fraud;

    f.    delay in receipt of tax refund monies;

    g.    unauthorized use of their stolen PII/PHI; and

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

CLASS ACTION COMPLAINT - 12

1               h.     continued risk to their PII/PHI—which remains in Defendants'

2                     possession—and is thus as risk for futures breaches so long as Defendants

3                     fails to take appropriate measures to protect the PII/PHI.

4     4.43    Stolen PII/PHI is one of the most valuable commodities on the criminal

5 information black market. According to Experian, a credit-monitoring service, stolen PII/PHI can

6 be worth up to $1,000.00 depending on the type of information obtained.

7     4.44    The value of Plaintiff and Class's PII/PHI on the black market is considerable.

8 Stolen PII/PHI trades on the black market for years. And criminals frequently post and sell stolen

9 information openly and directly on the "dark web"—further exposing the information.

10     4.45    It can take victims years to discover such identity theft and fraud. This gives

11 criminals plenty of time to sell the PII/PHI far and wide.

12     4.46    One way that criminals profit from stolen PII/PHI is by creating comprehensive

13 dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and

14 comprehensive. Criminals create them by cross-referencing and combining two sources of data—

15 first the stolen PII/PHI, and second, unregulated data found elsewhere on the internet (like phone

16 numbers, emails, addresses, etc.).

17     4.47    The development of "Fullz" packages means that the PII/PHI exposed in the Data

18 Breach can easily be linked to data of Plaintiff and the Class that is available on the internet.

19     4.48    In other words, even if certain information such as emails, phone numbers, or

20 credit card numbers may not be included in the PII/PHI stolen by the cyber-criminals in the Data

21 Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous

22 operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly

23 what is happening to Plaintiff and Class members, and it is reasonable for any trier of fact,

24 including this Court or a jury, to find that Plaintiff and other Class members' stolen PII/PHI is

25 being misused, and that such misuse is fairly traceable to the Data Breach.

26     4.49    Defendants disclosed the PII/PHI of Plaintiff and Class members for criminals to

use in the conduct of criminal activity. Specifically, Defendants opened up, disclosed, and

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3615
TEL 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1   exposed the PII/PHI of Plaintiff and Class members to people engaged in disruptive and unlawful

2   business practices and tactics, including online account hacking, unauthorized use of financial

3   accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud),

4   all using the stolen PII/PHI.

5       4.50    Defendants' failure to promptly and properly notify Plaintiff and Class members

6   of the Data Breach exacerbated Plaintiff and Class members' injury by depriving them of the

7   earliest ability to take appropriate measures to protect their PII/PHI and take other necessary steps

8   to mitigate the harm caused by the Data Breach.

9   *Defendants Knew—Or Should Have Known—of the Risk of a Data Breach*

10      4.51    Defendants' data security obligations were particularly important given the

11  substantial increase in cyberattacks and/or data breaches in recent years.

12      4.52    In 2021, a record 1,862 data breaches occurred, exposing approximately

13  293,927,708 sensitive records—a 68% increase from 2020.[34] Of the 1,862 recorded data breaches,

14  330 of them, or 17.7% were in the medical or healthcare industry.[35] Those 330 reported breaches

15  exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that

16  exposed nearly 10 million sensitive records (9,700,238) in 2020.[36]

17      4.53    Indeed, cyberattacks have become so notorious that the Federal Bureau of

18  Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are

19  aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller

20  municipalities and hospitals are attractive to ransomware criminals . . . because they often have

21  lesser IT defenses and a high incentive to regain access to their data quickly."[37]

22

23
_____

24  [34] *See 2021 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2022)
    https://notified.idtheftcenter.org/s/.

25  [35] *Id.*
    [36] *Id.*

26  [37] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18,
    2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-
    ransomware.

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1    4.54    In fact, according to the cybersecurity firm Mimecast, 90% of healthcare

2    organizations experienced cyberattacks in the past year.[38]

3    4.55    Therefore, the increase in such attacks, and attendant risk of future attacks, was

4    widely known to the public and to anyone in Defendants' industry, including Defendants.

5    **_Defendants Failed to Follow FTC Guidelines_**

6    4.56    According to the Federal Trade Commission ("FTC"), the need for data security

7    should be factored into all business decision-making. Thus, the FTC issued numerous guidelines

8    identifying best data security practices that businesses—like Defendant—should use to protect

9    against unlawful data exposure.

10    4.57    In 2016, the FTC updated its publication, _Protecting Personal Information: A_

11    _Guide for Business_. There, the FTC set guidelines for what data security principles and practices

12    businesses must use.[39] The FTC declared that, _inter alia_, businesses must:

13         a.    protect the personal customer information that they keep;

14         b.    properly dispose of personal information that is no longer needed;

15         c.    encrypt information stored on computer networks;

16         d.    understand their network's vulnerabilities; and

17         e.    implement policies to correct security problems.

18    4.58    The guidelines also recommend that businesses watch for the transmission of large

19    amounts of data out of the system—and then have a response plan ready for such a breach.

20    4.59    Furthermore, the FTC explains that companies must:

21         a.    not maintain information longer than is needed to authorize a transaction;

22         b.    limit access to sensitive data;

23

24    _____

[38] _See_ Maria Henriquez, _Iowa City Hospital Suffers Phishing Attack_, SECURITY MAGAZINE (Nov.
25    23, 2020), https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-
phishing-attack (last visited Sept. 11, 2023).
26    [39] _Protecting Personal Information: A Guide for Business_, FEDERAL TRADE COMMISSION
(Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-
personal-information.pdf.

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1           c.      require complex passwords to be used on networks;

2           d.      use industry-tested methods for security;

3           e.      monitor for suspicious activity on the network; and

4           f.      verify that third-party service providers use reasonable security measures.

5      4.60    The FTC brings enforcement actions against businesses for failing to protect

6 customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and

7 appropriate measures to protect against unauthorized access to confidential consumer data—as

8 an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"),

9 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must

10 take to meet their data security obligations.

11      4.61    In short, Defendants' failure to use reasonable and appropriate measures to protect

12 against unauthorized access to their current and former patients' data constitutes an unfair act or

13 practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

14 ***Defendants Failed to Follow Industry Standards***

15      4.62    Several best practices have been identified that—at a *minimum*—should be

16 implemented by businesses like Defendants. These industry standards include: educating all

17 employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-

18 malware software; encryption (making data unreadable without a key); multi-factor

19 authentication; backup data; and limiting which employees can access sensitive data.

20      4.63    Other industry standard best practices include: installing appropriate malware

21 detection software; monitoring and limiting the network ports; protecting web browsers and email

22 management systems; setting up network systems such as firewalls, switches, and routers;

23 monitoring and protection of physical security systems; protection against any possible

24 communication system; and training staff regarding critical points.

25      4.64    Defendants failed to meet the minimum standards of any of the following

26 frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation

PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5,

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1   PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center

2   for Internet Security's Critical Security Controls (CIS CSC), which are all established standards

3   in reasonable cybersecurity readiness.

4       4.65    These frameworks are applicable and accepted industry standards. And by failing

5   to comply with these accepted standards, Defendants opened the door to the criminals—thereby

6   causing the Data Breach.

7   ***Defendants Violated HIPAA***

8       4.66    HIPAA circumscribes security provisions and data privacy responsibilities

9   designed to keep patients' medical information safe. HIPAA compliance provisions, commonly

10   known as the Administrative Simplification Rules, establish national standards for electronic

11   transactions and code sets to maintain the privacy and security of protected health information.[40]

12       4.67    HIPAA provides specific privacy rules that require comprehensive administrative,

13   physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII/PHI

14   and PHI is properly maintained.[41]

15       4.68    The Data Breach itself resulted from a combination of inadequacies showing

16   Defendants failed to comply with safeguards mandated by HIPAA. Defendants' security failures

17   include, but are not limited to:

18           a.    failing to ensure the confidentiality and integrity of electronic PHI that they

19                 create, receive, maintain and transmit in violation of 45 C.F.R. §

20                 164.306(a)(1);

21

22

23

---

24   [40] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names,

25   addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

26   [41] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1        b.    failing to protect against any reasonably-anticipated threats or hazards to

2              the security or integrity of electronic PHI in violation of 45 C.F.R. §

3              164.306(a)(2);

4        c.    failing to protect against any reasonably anticipated uses or disclosures of

5              electronic PHI that are not permitted under the privacy rules regarding

6              individually identifiable health information in violation of 45 C.F.R. §

7              164.306(a)(3);

8        d.    failing to ensure compliance with HIPAA security standards by

9              Defendants' workforce in violation of 45 C.F.R. § 164.306(a)(4);

10       e.    failing to implement technical policies and procedures for electronic

11             information systems that maintain electronic PHI to allow access only to

12             those persons or software programs that have been granted access rights in

13             violation of 45 C.F.R. § 164.312(a)(1);

14       f.    failing to implement policies and procedures to prevent, detect, contain and

15             correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

16       g.    failing to identify and respond to suspected or known security incidents

17             and failing to mitigate, to the extent practicable, harmful effects of security

18             incidents that are known to the covered entity in violation of 45 C.F.R. §

19             164.308(a)(6)(ii);

20       h.    failing to effectively train all staff members on the policies and procedures

21             with respect to PHI as necessary and appropriate for staff members to carry

22             out their functions and to maintain security of PHI in violation of 45 C.F.R.

23             § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

24       i.    failing to design, implement, and enforce policies and procedures

25             establishing physical and administrative safeguards to reasonably

26             safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

CLASS ACTION COMPLAINT - 18

1    4.69    Simply put, the Data Breach resulted from a combination of insufficiencies that

2    demonstrate Defendants failed to comply with safeguards mandated by HIPAA regulations.

3                        **V.    CLASS ACTION ALLEGATIONS**

4    5.0    Plaintiff brings this class action under CR 23(a), 23(b)(2), and 23(b)(3),

5    individually and on behalf of Stephanie Aleshire and all members of the following class:

6            All individuals residing in Washington whose PII/PHI was
7            compromised in the Data Breach discovered by Defendants in
             November 2023, including all those individuals who received
8            notice of the breach.

9    5.1    Excluded from the Class are Defendants, their agents, affiliates, parents,

10   subsidiaries, any entity in which Defendants have a controlling interest, any Defendants' officer

11   or director, any successor or assign, and any Judge who adjudicates this case, including their staff

12   and immediate family.

13   5.2    Plaintiff reserves the right to amend the class definition.

14   5.3    Certification of Plaintiff's claims for class-wide treatment is appropriate because

15   Plaintiff can prove the elements of her claims on class-wide bases using the same evidence as

16   would be used to prove those elements in individual actions asserting the same claims.

17   5.4    Ascertainability. All members of the proposed Class are readily ascertainable from

18   information in Defendants' custody and control. After all, Defendants already identified some

19   individuals and sent them data breach notices.

20   5.5    Numerosity. The Class members are so numerous that joinder of all Class

21   members is impracticable. Upon information and belief, the proposed Class includes at least one

22   hundred members.

23   5.6    Typicality. Plaintiff's claims are typical of Class members' claims as each arises

24   from the same Data Breach, the same alleged violations by Defendants, and the same

25   unreasonable manner of notifying individuals about the Data Breach.

26   5.7    Adequacy. Plaintiff will fairly and adequately protect the proposed Class's

common interests. Her interests do not conflict with Class members' interests. And Plaintiff has

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1  retained counsel—including lead counsel—that is experienced in complex class action litigation

2  and data privacy to prosecute this action on the Class's behalf.

3      5.8    Commonality and Predominance. Plaintiff's and the Class's claims raise

4  predominantly common fact and legal questions—which predominate over any questions

5  affecting individual Class members—for which a class wide proceeding can answer for all Class

6  members. In fact, a class wide proceeding is necessary to answer the following questions:

7          a.    if Defendants had a duty to use reasonable care in safeguarding Plaintiff's

8             and the Class's PII/PHI;

9          b.    if Defendants failed to implement and maintain reasonable security

10             procedures and practices appropriate to the nature and scope of the

11             information compromised in the Data Breach;

12          c.    if Defendants were negligent in maintaining, protecting, and securing

13             PII/PHI;

14          d.    if Defendants breached contract promises to safeguard Plaintiff and the

15             Class's PII/PHI;

16          e.    if Defendants took reasonable measures to determine the extent of the Data

17             Breach after discovering it;

18          f.    if Defendants' Breach Notice was reasonable;

19          g.    if the Data Breach caused Plaintiff and the Class injuries;

20          h.    what the proper damages measure is; and

21          i.    if Plaintiff and the Class are entitled to damages, treble damages, and or

22             injunctive relief.

23      5.9    Superiority. A class action is superior to all other available means for the fair and

24  efficient adjudication of this controversy. The damages or other financial detriment suffered by

25  individual Class members are relatively small compared to the burden and expense that individual

26  litigation against Defendants would require. Thus, it would be practically impossible for Class

members, on an individual basis, to obtain effective redress for their injuries. Not only would

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1  individualized litigation increase the delay and expense to all parties and the courts, but

2  individualized litigation would also create the danger of inconsistent or contradictory judgments

3  arising from the same set of facts. By contrast, the class action device provides the benefits of

4  adjudication of these issues in a single proceeding, ensures economies of scale, provides

5  comprehensive supervision by a single court, and presents no unusual management difficulties.

6                            **VI.    FIRST CAUSE OF ACTION**
7                                          **Negligence**
                                 **(On Behalf of Plaintiff and the Class)**
8
        6.0    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.
9
        6.1    Plaintiff and the Class (or their third-party agents) entrusted their PII/PHI to
10
   Defendants on the premise and with the understanding that Defendants would safeguard their
11
   PII/PHI, use their PII/PHI for business purposes only, and/or not disclose their PII/PHI to
12
   unauthorized third parties.
13
        6.2    Defendants owed a duty of care to Plaintiff and Class members because it was
14
   foreseeable that Defendants' failure—to use adequate data security in accordance with industry
15
   standards for data security—would compromise their PII/PHI in a data breach. And here, that
16
   foreseeable danger came to pass.
17
        6.3    Defendants have full knowledge of the sensitivity of the PII/PHI and the types of
18
   harm that Plaintiff and the Class could and would suffer if their PII/PHI was wrongfully disclosed.
19
        6.4    Defendants owed these duties to Plaintiff and Class members because they are
20
   members of a well-defined, foreseeable, and probable class of individuals whom Defendants
21
   knew or should have known would suffer injury-in-fact from Defendants' inadequate security
22
   practices. After all, Defendants actively sought and obtained Plaintiff and Class members'
23
   PII/PHI.
24
        6.5    Defendants owed—to Plaintiff and Class members—at least the following duties
25
   to:
26

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1

    a.    exercise reasonable care in handling and using the PII/PHI in their care and

2

        custody;

3

    b.    implement industry-standard security procedures sufficient to reasonably

4

        protect the information from a data breach, theft, and unauthorized;

5

    c.    promptly detect attempts at unauthorized access;

6

    d.    notify Plaintiff and Class members within a reasonable timeframe of any

7

        breach to the security of their PII/PHI.

8

6.6    Thus, Defendants owed a duty to timely and accurately disclose to Plaintiff and

9

Class members the scope, nature, and occurrence of the Data Breach. After all, this duty is

10

required and necessary for Plaintiff and Class members to take appropriate measures to protect

11

their PII/PHI, to be vigilant in the face of an increased risk of harm, and to take other necessary

12

steps to mitigate the harm caused by the Data Breach.

13

6.7    Defendants also had a duty to exercise appropriate clearinghouse practices to

14

remove PII/PHI they was no longer required to retain under applicable regulations.

15

6.8    Defendants knew or reasonably should have known that the failure to exercise due

16

care in the collecting, storing, and using of the PII/PHI of Plaintiff and the Class involved an

17

unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the

18

criminal acts of a third party.

19

6.9    Defendants' duty to use reasonable security measures arose because of the special

20

relationship that existed between Defendants and Plaintiff and the Class. That special relationship

21

arose because Plaintiff and the Class (or their third-party agents) entrusted Defendants with their

22

confidential PII/PHI, a necessary part of obtaining services from Defendants.

23

6.10    Under the FTC Act, 15 U.S.C. § 45, Defendants had a duty to use fair and adequate

24

computer systems and data security practices to safeguard Plaintiff and Class members' PII/PHI.

25

6.11    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce,"

26

including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such

as Defendant, of failing to use reasonable measures to protect the PII/PHI entrusted to it. The FTC

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1 | publications and orders promulgated pursuant to the FTC Act also form part of the basis of
2 | Defendants' duty to protect Plaintiff and the Class members' sensitive PII/PHI.

3 |     6.12    Defendants violated their duty under Section 5 of the FTC Act by failing to use
4 | reasonable measures to protect PII/PHI and not complying with applicable industry standards as
5 | described in detail herein. Defendants' conduct was particularly unreasonable given the nature
6 | and amount of PII/PHI Defendants had collected and stored and the foreseeable consequences of
7 | a data breach, including, specifically, the immense damages that would result to individuals in
8 | the event of a breach, which ultimately came to pass.

9 |     6.13    Similarly, under HIPAA, Defendants had a duty to follow HIPAA standards for
10 | privacy and security practices—as to protect Plaintiff's and Class members' PHI.

11 |     6.14    Defendants violated their duty under HIPAA by failing to use reasonable measures
12 | to protect their PHI and by not complying with applicable regulations detailed *supra*. Here too,
13 | Defendants' conduct was particularly unreasonable given the nature and amount of PHI that
14 | Defendants collected and stored and the foreseeable consequences of a data breach, including,
15 | specifically, the immense damages that would result to individuals in the event of a breach, which
16 | ultimately came to pass.

17 |     6.15    The risk that unauthorized persons would attempt to gain access to the PII/PHI and
18 | misuse it was foreseeable. Given that Defendants hold vast amounts of PII/PHI, it was inevitable
19 | that unauthorized individuals would attempt to access Defendants' databases containing the
20 | PII/PHI —whether by malware or otherwise.

21 |     6.16    PII/PHI is highly valuable, and Defendants knew, or should have known, the risk
22 | in obtaining, using, handling, emailing, and storing the PII/PHI of Plaintiff and Class members'
23 | and the importance of exercising reasonable care in handling it.

24 |     6.17    Defendants improperly and inadequately safeguarded the PII/PHI of Plaintiff and
25 | the Class in deviation of standard industry rules, regulations, and practices at the time of the Data
26 | Breach.

    6.18    Defendants breached these duties as evidenced by the Data Breach.

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

CLASS ACTION COMPLAINT - 23

6.19    Defendants acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class members' PII/PHI by:

      a.    disclosing and providing access to this information to third parties and

      b.    failing to properly supervise both the way the PII/PHI was stored, used, and exchanged, and those in their employ who were responsible for making that happen.

6.20    Defendants breached their duties by failing to exercise reasonable care in supervising their agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII/PHI of Plaintiff and Class members which actually and proximately caused the Data Breach and Plaintiff and Class members' injury.

6.21    Defendants further breached their duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class members' injuries-in-fact.

6.22    Defendants have admitted that the PII/PHI of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

6.23    As a direct and traceable result of Defendants' negligence and/or negligent supervision, Plaintiff and Class members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

6.24    And, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the dark web.

6.25    Defendants' breach of their common-law duties to exercise reasonable care and their failures and negligence actually and proximately caused Plaintiff and Class members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII/PHI by criminals, improper disclosure of their PII/PHI, lost benefit of their bargain, lost value of their PII/PHI, and lost time and money incurred to mitigate and remediate the effects of the Data Breach

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

CLASS ACTION COMPLAINT - 24

that resulted from and were caused by Defendants' negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## VII.    SECOND CAUSE OF ACTION
### Breach of Implied Contract
### (On Behalf of Plaintiff and the Class)

7.0    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

7.1    Plaintiff and Class members (or their third-party agents) were required to provide their PII/PHI to Defendants as a condition of receiving medical services provided by Defendants. Plaintiff and Class members (or their third-party agents) provided their PII/PHI to Defendants or their third-party agents in exchange for Defendants' medical services.

7.2    Plaintiff and Class members (or their third-party agents) reasonably understood that a portion of the funds they paid Defendants would be used to pay for adequate cybersecurity measures.

7.3    Plaintiff and Class members (or their third-party agents) reasonably understood that Defendants would use adequate cybersecurity measures to protect the PII/PHI that they were required to provide based on Defendants' duties under state and federal law and their internal policies.

7.4    Plaintiff and the Class members (or their third-party agents) accepted Defendants' offers by disclosing their PII/PHI to Defendants or their third-party agents in exchange for medical services.

7.5    In turn, and through internal policies, Defendants agreed to protect and not disclose the PII/PHI to unauthorized persons.

7.6    In their Privacy Policies, Defendants represented that they had a legal duty to protect Plaintiff's and Class Member's PII/PHI.

7.7    Implicit in the parties' agreement was that Defendants would provide Plaintiff and Class members (or their third-party agents) with prompt and adequate notice of all unauthorized access and/or theft of their PII/PHI.

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1       7.8    After all, Plaintiff and Class members (or their third-party agents) would not have

2   entrusted their PII/PHI to Defendants in the absence of such an agreement with Defendants.

3       7.9    Plaintiff and the Class (or their third-party agents) fully performed their

4   obligations under the implied contracts with Defendants.

5       7.10    The covenant of good faith and fair dealing is an element of every contract. Thus,

6   parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair

7   dealing, in connection with executing contracts and discharging performance and other duties

8   according to their terms, means preserving the spirit—and not merely the letter—of the bargain.

9   In short, the parties to a contract are mutually obligated to comply with the substance of their

10  contract in addition to its form.

11      7.11    Subterfuge and evasion violate the duty of good faith in performance even when

12  an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And

13  fair dealing may require more than honesty.

14      7.12    Defendants materially breached the contracts it entered with Plaintiff and Class

15  members (or their third-party agents) by:

16          a.    failing to safeguard their information;

17          b.    failing to notify them promptly of the intrusion into their computer systems

18              that compromised such information.

19          c.    failing to comply with industry standards;

20          d.    failing to comply with the legal obligations necessarily incorporated into

21              the agreements; and

22          e.    failing to ensure the confidentiality and integrity of the electronic PII/PHI

23              that Defendants created, received, maintained, and transmitted.

24      7.13    In these and other ways, Defendants violated their duty of good faith and fair

25  dealing.

26      7.14    Defendants' material breaches were the direct and proximate cause of Plaintiff's

and Class members' injuries (as detailed *supra*).

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

7.15    And, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the dark web.

7.16    Plaintiff and Class members (or their third-party agents) performed as required under the relevant agreements, or such performance was waived by Defendants' conduct.

## VIII. THIRD CAUSE OF ACTION
### Breach of Fiduciary Duty
### (On Behalf of Plaintiff and the Class)

8.0    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

8.1    Given the relationship between Defendants and Plaintiff and Class members, where Defendants became guardian of Plaintiff's and Class members' PII/PHI, Defendants became a fiduciary by their undertaking and guardianship of the PII/PHI, to act primarily for Plaintiff and Class members, (1) for the safeguarding of Plaintiff and Class members' PII/PHI; (2) to timely notify Plaintiff and Class members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendants did and does store.

8.2    Defendants has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of Defendants' relationship with them—especially to secure their PII/PHI.

8.3    Because of the highly sensitive nature of the PII/PHI, Plaintiff and Class members (or their third-party agents) would not have entrusted Defendant, or anyone in Defendants' position, to retain their PII/PHI had they known the reality of Defendants' inadequate data security practices.

8.4    Defendants breached their fiduciary duties to Plaintiff and Class members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class members' PII/PHI.

8.5    Defendants also breached their fiduciary duties to Plaintiff and Class members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

8.6     As a direct and proximate result of Defendants' breach of its fiduciary duties, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

## IX.    FOURTH CAUSE OF ACTION
### Invasion of Privacy
### (On Behalf of Plaintiff and the Class)

9.0     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

9.1     Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII/PHI and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

9.2     Defendants owed a duty to their current and former patients, including Plaintiff and the Class, to keep this information confidential.

9.3     The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and Class members' PII/PHI is highly offensive to a reasonable person.

9.4     The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class (or their third-party agents) disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

9.5     The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

9.6     Defendants acted with a knowing state of mind when they permitted the Data Breach because they knew their information security practices were inadequate.

9.7     Defendants acted with a knowing state of mind when they failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1    9.8    Acting with knowledge, Defendants had notice and knew that their inadequate

2    cybersecurity practices would cause injury to Plaintiff and the Class.

3    9.9    As a proximate result of Defendants' acts and omissions, the private and sensitive

4    PII/PHI of Plaintiff and the Class were stolen by a third party and is now available for disclosure

5    and redisclosure without authorization, causing Plaintiff and the Class to suffer damages (as

6    detailed *supra*).

7    9.10    And, on information and belief, Plaintiff's PII/PHI has already been published—

8    or will be published imminently—by cybercriminals on the dark web.

9    9.11    Unless and until enjoined and restrained by order of this Court, Defendants'

10    wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class

11    since their PII/PHI are still maintained by Defendants with their inadequate cybersecurity system

12    and policies.

13    9.12    Plaintiff and the Class have no adequate remedy at law for the injuries relating to

14    Defendants' continued possession of their sensitive and confidential records. A judgment for

15    monetary damages will not end Defendants' inability to safeguard the PII/PHI of Plaintiff and the

16    Class.

17    9.13    In addition to injunctive relief, Plaintiff, on behalf of herself and the other Class

18    members, also seeks compensatory damages for Defendants' invasion of privacy, which includes

19    the value of the privacy interest invaded by Defendant, the costs of future monitoring of their

20    credit history for identity theft and fraud, plus prejudgment interest and costs.

21
22
### X.    FIFTH CAUSE OF ACTION
#### Unjust Enrichment
#### (On Behalf of Plaintiff and the Class)

23    10.0    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

24    10.1    This claim is pleaded in the alternative to the breach of implied contract claim.

25
26

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

CLASS ACTION COMPLAINT - 29

10.2    Plaintiff and Class members (or their third-party agents) conferred a benefit upon Defendants. After all, Defendants benefitted from using their PII/PHI and payment to provide services and/or collect payment.

10.3    Defendants appreciated or had knowledge of the benefits it received from Plaintiff and Class members (or their third-party agents). And Defendants benefited from receiving Plaintiff's and Class members' PII/PHI and payment, as this was used to provide services and/or collect payment.

10.4    Plaintiff and Class members (or their third-party agents) reasonably understood that Defendants would use adequate cybersecurity measures to protect the PII/PHI that they were required to provide based on Defendants' duties under state and federal law and their internal policies.

10.5    Defendants enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class members' PII/PHI.

10.6    Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendants instead calculated to avoid their data security obligations at the expense of Plaintiff and Class members by utilizing cheaper, ineffective security measures. Plaintiff and Class members, on the other hand, suffered as a direct and proximate result of Defendants' failure to provide the requisite security.

10.7    Under principles of equity and good conscience, Defendants should not be permitted to retain the full value of Plaintiff's and Class members' PII/PHI and payment because Defendants failed to adequately protect their PII/PHI.

10.8    Plaintiff and Class members have no adequate remedy at law.

10.9    Defendants should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class members—all unlawful or inequitable proceeds that they received because of their misconduct.

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

CLASS ACTION COMPLAINT - 30

## XI.    SIXTH CAUSE OF ACTION
### Violation of Washington Consumer Protection Act
### RCW 19.86.010, *et seq.*
### (On Behalf of Plaintiff and the Class)

11.0    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

11.1    The Washington State Consumer Protection Act, RCW 19.86.020 (the "CPA") prohibits any "unfair or deceptive acts or practices" in the conduct of any trade or commerce as those terms are described by the CPA and relevant case law.

11.2    Each Defendant is a "person" as described in RWC 19.86.010(1).

11.3    Defendants engage in "trade" and "commerce" as described in RWC 19.86.010(2) in that they engage in the sale of services and commerce directly and indirectly affecting the people of the State of Washington.

11.4    By virtue of the above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Defendants engaged in unlawful, unfair and fraudulent practices within the meaning, and in violation of, the CPA, in that Defendants' practices were injurious to the public interest because they injured other persons, had the capacity to injure other persons, and have the capacity to injure other persons.

11.5    Defendants' failure to safeguard the PII/PHI exposed in the Data Breach constitutes an unfair act that offends public policy.

11.6    Defendants' failure to safeguard the PII/PHI compromised in the Data Breach caused substantial injury to Plaintiff and Class Members. Defendants' failure is not outweighed by any countervailing benefits to consumers or competitors, and it was not reasonably avoidable by consumers.

11.7    Defendants' failure to safeguard the PII/PHI disclosed in the Data Breach, and their failure to provide timely and complete notice of that Data Breach to the victims, is unfair because these acts and practices are immoral, unethical, oppressive, and/or unscrupulous.

11.8    In the course of conducting their business, Defendants committed "unfair or deceptive acts or practices" by, *inter alia*, knowingly failing to design, adopt, implement, control,

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3615
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

CLASS ACTION COMPLAINT - 31

1  direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies,
2  procedures, protocols, and software and hardware systems to safeguard and protect Plaintiff's and
3  Class Members' PII/PHI, and violating the common law alleged herein in the process. Plaintiff
4  and Class Members reserve the right to allege other violations of law by Defendants constituting
5  other unlawful business acts or practices. As described above, Defendants' wrongful actions,
6  inaction, omissions, and want of ordinary care are ongoing and continue to this date.

7      11.9    Defendants also violated the CPA by failing to timely notify, and by concealing
8  from Plaintiff and Class Members, information regarding the unauthorized release and disclosure
9  of their PII/PHI. If Plaintiff and Class Members had been notified in an appropriate fashion, and
10 had the information not been hidden from them, they could have taken precautions to safeguard
11 and protect their PII/PHI and identities.

12     11.10   Defendants' above-described wrongful actions, inaction, omissions, want of
13 ordinary care, misrepresentations, practices, and non-disclosures also constitute "unfair or
14 deceptive acts or practices" in violation of the CPA in that Defendants' wrongful conduct is
15 substantially injurious to other persons, had the capacity to injure other persons, and has the
16 capacity to injure other persons.

17     11.11   The gravity of Defendants' wrongful conduct outweighs any alleged benefits
18 attributable to such conduct. There were reasonably available alternatives to further Defendants'
19 legitimate business interests other than engaging in the above-described wrongful conduct.

20     11.12   Defendants' unfair or deceptive acts or practices occurred in their trade or business
21 and have injured and are capable of injuring a substantial portion of the public. Defendants'
22 general course of conduct as alleged herein is injurious to the public interest, and the acts
23 complained of herein are ongoing and/or have a substantial likelihood of being repeated.

24     11.13   As a direct and proximate result of Defendants' above-described wrongful actions,
25 inaction, omissions, and want of ordinary care that directly and proximately caused the Data
26 Breach and their violations of the CPA, Plaintiff and Class Members have suffered, and will
   continue to suffer, economic damages and other injury and actual harm in the form of, *inter alia*,

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1  (1) an imminent, immediate and the continuing increased risk of identity theft, identity fraud—

2  risks justifying expenditures for protective and remedial services for which they are entitled to

3  compensation; (2) invasion of privacy; (3) breach of the confidentiality of their PII/PHI; (5)

4  deprivation of the value of their PII/PHI, for which there is a well-established national and

5  international market; and/or (6) the financial and temporal cost of monitoring credit, monitoring

6  financial accounts, and mitigating damages.

7      11.14  Unless restrained and enjoined, Defendants will continue to engage in the

8  wrongful conduct (detailed *supra*) and more data breaches will occur. Plaintiff, therefore, on

9  behalf of themselves and the Class, seek restitution and an injunction prohibiting Defendants from

10  continuing such wrongful conduct, and requiring Defendants to design, adopt, implement, control,

11  direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies,

12  procedures protocols, and software and hardware systems to safeguard and protect the PII/PHI

13  entrusted to it.

14     11.15  Plaintiff, on behalf of herself and Class Members, also seek to recover actual

15  damages sustained by each Class Member together with the costs of the suit, including reasonable

16  attorney fees. In addition, Plaintiff, on behalf of themselves and Class Members, request that this

17  Court use its discretion, pursuant to RCW 19.86.090, to increase the damages award for each

18  Class Member by three times the actual damages sustained not to exceed $25,000.00 per Class

19  Member.

20                          **XII.   SEVENTH CAUSE OF ACTION**
21                **Violation of Washington Data Breach Disclosure Law**
                              **RCW 19.255.005, *et seq.***
22                       **(On Behalf of Plaintiff and the Class)**

23     12.0  Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

24     12.1  Under RCW § 19.255.010(2), "[a]ny person or business that maintains

25  computerized data that includes personal information that the person or business does not own

26  shall notify the owner or licensee of the information of any breach of the security of the data

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

CLASS ACTION COMPLAINT - 33

1  immediately following discovery, if the personal information was, or is reasonably believed to

2  have been, acquired by an unauthorized person."

3      12.2  Upon information and belief, this statute applies to Defendants because

4  Defendants does not own nor license the PII/PHI in question. Instead, the owners and/or licensees

5  of the PII/PHI are Plaintiff and the Class.

6      12.3  Here, the Data Breach led to "unauthorized acquisition of computerized data that

7  compromise[d] the security, confidentiality, [and] integrity of personal information maintained

8  by" Defendants, leading to a "breach of the security of [Defendants'] systems," as defined by

9  RCW § 19.255.010.

10     12.4  Defendants failed to disclose that the PII/PHI—of Plaintiffs and Class Members—

11  that had been compromised "immediately" upon discovery, and thus unreasonably delayed

12  informing Plaintiffs and the proposed Class about the Data Breach.

13     12.5  Thus, Defendants violated the Washington Data Breach Disclosure Law.

### XIII.  EIGHTH CAUSE OF ACTION
**Violation of Washington Uniform Health Care Information Act (UHCIA)**
**RCW 70.02.005, *et seq*.**
**(On Behalf of Plaintiff and the Class)**

17     13.0  Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

18     13.1  UHCIA declares that:

19         a.  "Health care information is personal and sensitive information that if

20             improperly used or released may do significant harm to a patient's interests

21             in privacy, health care, or other interests." § 70.02.005(1).

22         b.  "In order to retain the full trust and confidence of patients, health care

23             providers have an interest in assuring that health care information is not

24             improperly disclosed and in having clear and certain rules for the

25             disclosure of health care information." § 70.02.005(3).

26         c.  "It is the public policy of this state that a patient's interest in the proper use

             and disclosure of the patient's health care information survives even when

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1    the information is held by persons other than health care providers." §

2    70.02.005(4).

3    13.2    Here, each Defendant is a "health care provider" because they are "licensed,

4    certified, registered, or otherwise authorized by the law of this state to provide health care in the

5    ordinary course of business or practice of a profession." § 70.02.010(19).

6    13.3    Under § 70.02.020, "a health care provider, an individual who assists a health care

7    provider in the delivery of health care, or an agent and employee of a health care provider may

8    not disclose health care information about a patient to any other person without the patient's

9    written authorization."

10    13.4    Here, Defendants violated UHCIA because Defendants—via their Data Breach—

11    disclosed health care information to third parties without patient authorization.

12    13.5    Thus, Plaintiff seeks, *inter alia*, all civil remedies available under § 70.02.170

13    including actual damages, attorneys' fees, and reasonable expenses.

14    ## XIV.   PRAYER FOR RELIEF

15    Plaintiff and Class members respectfully request judgment against Defendants and that the Court

16    enter an order:

17    A.    Certifying this case as a class action on behalf of Plaintiff and the proposed Class,

18    appointing Plaintiff as class representative, and appointing her counsel to represent

19    the Class;

20    B.    Awarding declaratory and other equitable relief as necessary to protect the

21    interests of Plaintiff and the Class;

22    C.    Awarding injunctive relief as necessary to protect the interests of Plaintiff and the

23    Class;

24    D.    Awarding Plaintiff and the Class damages including applicable compensatory,

25    exemplary, punitive damages, and statutory damages, as allowed by law;

26    E.    Awarding restitution and damages to Plaintiff and the Class in an amount to be

determined at trial;

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1  F. Awarding attorneys' fees and costs, as allowed by law;

2  G. Awarding prejudgment and post-judgment interest, as provided by law;

3  H. Granting Plaintiff and the Class leave to amend this complaint to conform to the

4   evidence produced at trial; and

5  I. Granting other relief that this Court finds appropriate.

6 Date: December 13, 2023    Respectfully submitted,

7        By: /s/ Samuel J. Strauss, WSBA #46971

8         Samuel J. Strauss, WSBA #46971
         TURKE & STRAUSS LLP

9         613 Williamson St., Suite 201
         Madison, Wisconsin 53703-3515

10        Telephone: (608) 237-1775
         Facsimile: (608) 509 4423

11        sam@turkestrauss.com

12        *Attorneys for Plaintiff and Proposed Class*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com